**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**SEAN CARTER BRADLEY,**

**Plaintiff,**

**v.**                                                              **CASE NO. 23-3108-JWL**

**(FNU) HILL, ET AL.,**

**Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff and pretrial detainee Sean Carter Bradley initiated this matter by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. 1.) Plaintiff proceeds in forma pauperis. The initial complaint he filed was missing pages 2 and 3. *Id.* On May 1, 2023, the Court received a second "complaint" from Plaintiff, but this was missing pages 4 and 5. (Doc. 3.) The same day, the Court also received an "amended complaint" from Plaintiff, but the amended complaint was also missing pages. (Doc. 4.) At that point, the Court issued a memorandum and order directing Plaintiff to submit a second amended complaint, on the court-approved form, that includes all pages and all exhibits, on or before June 2, 2023. (Doc. 7.)

Since that time, Plaintiff has filed three sets of documents, none of which contain a complete complaint. (Docs. 8, 9, 11.) When two of the filings are considered together, however, they appear to constitute one complete complaint. (Docs. 9, 11.) In the interest of judicial efficiency, the Court has conducted an initial review of the documents which, when taken together, appear to constitute a complete complaint. The Court has identified certain deficiencies therein, which are set forth below and which leave the complaint subject to dismissal.

The Court will grant Plaintiff additional time to submit a complete and proper third

1

amended complaint that cures the deficiencies identified in this order. To be perfectly clear, Plaintiff must mail, in a single envelope, all pages of the court-approved form complaint and all exhibits and attachments upon which he wishes to rely in this matter. Plaintiff may attach additional pages to the form complaint if necessary, but he should not utilize the forms only to refer the Court to attachments.[1] If Plaintiff fails to file a complete and proper third amended complaint on or before June 30, 2023, this matter may be dismissed without further prior notice to Plaintiff for failure to comply with a court order.

## I.    Nature of the Matter before the Court

Plaintiff names as defendants Ms. Hill, Aramark Food Service Supervisor; the Wyandotte County Sheriff; John and Jane Does, Sheriff's deputies and medical staff; the Wyandotte County Adult Detention Center (WCADC); "Sheriff J.D. Mr. Thomas [and] Sheriff Mr. Lopez [and] Sheriff Ms. Garcia"; and Ms. D.D., Ms. Jessica, Ms. Rhonda, John Does, and Jane Does, all nurses at Wyandotte County Jail. (Doc. 9, p. 1, 4.) As the factual background for this complaint, Plaintiff alleges that on approximately 11:00 a.m. on April 12, 2023, Defendant Thomas delivered a meal provided by Aramark Food Service to Plaintiff in the F-Pod at the WCADC; when eating the meal in his cell, Plaintiff bit into a human tooth that was in the food; the tooth contained human blood. (*Id.* at 4; Doc. 9-1, p.1-2). Plaintiff's own tooth was broken and the inside of his mouth was "severely cut," causing bleeding and severe pain." (Doc. 9-1, p. 1-2.)

Plaintiff, who could not eat any more, set aside his meal. Approximately 6 minutes later, Plaintiff approached Defendant Deputy Thomas and Defendant Deputy John Doe, whom he asked

---

[1] For example, in the portion of the current complaint set aside for Plaintiff to state his cause of action in Count I, Plaintiff wrote only "See attachment pgs 3a, 3b, 3c, 3d, and 3e below attachment to: 42 U.S.C. § 1983 [*sic*]." (Doc. 11, p. 1.) In the space for stating the supporting facts for Count I, Plaintiff wrote the same. *Id.* If Plaintiff chooses to file a third amended complaint, this type of general reference is improper. Rather, Plaintiff must utilize the form complaint and provide on the form itself the information requested, attaching additional pages only as necessary.

for medical assistance, to see the dentist, and that the tooth from his food be tested for disease. (*Id.* at 2; Doc. 9-1, p. 2.) Plaintiff specifically told them that he had cut his mouth, he was in extreme pain, and he believed he might need stitches. *Id.* Defendant Thomas repeatedly told Plaintiff to request a sick call and eventually, Defendant Thomas told Plaintiff to return to his cell. *Id.* Plaintiff asked if he could go get a sick-call form, and Defendant Thomas told Plaintiff that if he didn't return to his cell, Defendant Thomas would take Plaintiff's tablet for 2 weeks. *Id.* at 2-3. Plaintiff returned to his cell.

At approximately 11:34 a.m., Defendant Thomas made a joke that apparently had something to do with Plaintiff finding a tooth in his food.[2] (Doc. 9, p. 2-3.) Defendant Thomas also stated at that time that he "'did what any [Sheriff] of [WCADC would] do to [i]ndividuals like Mr. Bradley who take[] advantage of 33rd and Miller Hill.'"[3] *Id.* at 3. At approximately 12:17 p.m., Plaintiff heard Defendant Deputy Lopez outside his cell door. (Doc. 9-1, p. 3.) Plaintiff showed Defendant Lopez the tooth he had bitten into and the bleeding in his mouth and he asked for medical attention. *Id.* Defendant Lopez told Plaintiff he should have talked to Defendant Thomas and, when Plaintiff explained that he had but Defendant Thomas refused to bring him a sick-call form, Defendant Lopez said, "'I don't know what to tell ya [*sic*],'" and walked away. *Id.*

At around 1:24 p.m., Plaintiff saw Defendant Nurse Jane Doe passing medication. *Id.* he explained to her that his tooth was broken and he had significant cuts in his mouth from biting into a human tooth. *Id.* The nurse asked Plaintiff whether he had put in for a sick call and he explained that Defendants Thomas and Lopez would not bring him the form. *Id.* When Plaintiff asked the

---

[2] The current complaint leaves the timeline of these events less than clear, as Plaintiff in one part of the complaint alleges he was unable to eat immediately after biting into the tooth and in another part of the complaint alleges he was unable to eat after Defendant Thomas' joke.

[3] Plaintiff understood the comment to refer to the area where he was raised and where Defendant Hill also lived. (Doc. 9, p. 3.) Plaintiff believes that Defendant Hill might know him from the area. *Id.*

nurse if she would bring him the form, she replied that she was passing medication and repeated that Plaintiff needed to put in for a sick call. *Id.* Plaintiff attempted to show her the tooth that had been in his food and explained that he was worried about exposure to disease. *Id.* at 3-4. The nurse then walked away, ignoring Plaintiff's further requests for medical attention. At 1:30 p.m. the same day, Defendant Nurse D.D. saw the tooth and told Plaintiff that the dentist would be at the WCADC two days later, on Friday, April 14, 2023. (Doc. 9, p. 2.)

At around 5:00 p.m., Plaintiff's cell was unlocked for the dinner meal. (Doc. 9-1, p. 4.) Plaintiff was in extreme pain, so he left his cell and approached Defendant Thomas, asking for a sick-call form and a grievance form. *Id.* Plaintiff informed Defendant Thomas that he did not know if he could eat and that he needed medical attention. *Id.* Defendant Thomas said he would bring the forms to Plaintiff after dinner and, when Plaintiff reminded him that Defendant Thomas had said much earlier in the day that he would bring the forms, Defendant Thomas told Plaintiff to get to his cell. *Id.* After dinner, while returning his tray, Plaintiff again requested medical assistance and the sick-call and grievance forms. *Id.* Defendant Thomas told Plaintiff to go back to his cell and he would get the forms after the dinner trays were picked up. *Id.*

Plaintiff returned to his cell and fell asleep, but woke up later that night as a result of throbbing pain in his tooth. *Id.* Not long after, Defendant Deputy John Doe walked by Plaintiff's cell. *Id.* Plaintiff got the deputy's attention and explained what had happened, stating that he still needed medical attention and he would like to "make [a] record of the human tooth still in [his] possession." *Id.* at 4-5. The deputy told Plaintiff to put in for a sick call and gave Plaintiff the form; he also brought Plaintiff a grievance form when asked to do so. *Id.* at 5. At approximately 10:30 p.m., Plaintiff placed the tooth from his food in an envelope and addressed the envelope to this Court. *Id.* The deputy picked up the envelope and the completed sick-call and grievance forms and

Plaintiff returned to bed to try to sleep through the pain. (*Id.* at 5; Doc. 11, p. 3.)

At approximately noon the following day, Defendant Nurse Jessica saw Plaintiff and observed the "object/tooth in [Plaintiff's] gums." (Doc. 9, p. 2.) Plaintiff asked to see the dentist, but the request was denied. *Id.* Shortly thereafter, Jane Doe, whom Plaintiff identifies as "legal person[n]el," asked Plaintiff to open the envelope with the tooth that he had addressed to this Court. *Id.* She informed Plaintiff he "could not do that," and Plaintiff retrieved and kept the tooth, which he "sent . . . another way." (Doc. 9-1, p. 5.)

At noon on April 14, 2023, Plaintiff was examined by the dentist, who stated that Plaintiff needed a tooth pulled. *Id.* When Plaintiff asked if the dentist was sure, the dentist replied, "'Yes.'" *Id.* On May 1, 2023, Defendant Nurse Rhonda saw Plaintiff and refused to accommodate Plaintiff's requests for blood tests or a tetanus shot. (Doc. 9, p. 2.) Plaintiff believed his bottom lip was infected as a result of his biting into a tooth, but Defendant Rhonda said that it was just a sore and that if it didn't heal in 3-5 days, he should put in for a sick call. *Id.*

The sole count in the current complaint, Count I, alleges the violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment and the violation of his Fourteenth Amendment right to due process. (Doc. 9-1, p. 1; Doc. 11, p. 1.) As the supporting facts for this count, Plaintiff relies on the facts detailed above, alleging that Defendants acted with deliberate indifference to his serious medical needs. (Doc. 9-1, p. 1.) As relief, Plaintiff seeks $250,000.00 in compensatory damages; $100,000.00 for pain and suffering; $500,000.00 in punitive damages; an order that the tooth in his food be tested for disease; and any future damages that result from exposure to those diseases. (Doc. 11, p. 3.)

## II.   Screening Standards

Because Plaintiff is a prisoner, the Court is required by statute to screen his complaint and

to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)(quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, at 550 U.S. at 570).

### III.    Discussion

#### A.  Improper Defendant

This action is subject to dismissal as it is brought against the WCADC. Prison and jail facilities are not proper defendants because none is a "person" subject to suit for money damages under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 71 (1989) (neither state nor state agency is a "person" which can be sued under Section 1983); *Davis v. Bruce*, 215 F.R.D. 612, 618 (D. Kan. 2003), *aff'd in relevant part* 129 Fed. Appx. 406, 408 (10th Cir. 2005).

#### B.  Personal Participation

This action is subject to dismissal as it is brought against Defendants Hill, the Wyandotte County Sheriff, and Garcia because the current complaint does not allege sufficient personal participation in the acts underlying the complaint. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). The current complaint does not allege any direct participation in the relevant events by Defendants Hill, Garcia, or the Wyandotte County Sheriff. In addition, with respect to the Sheriff, a supervisor is only liable under § 1983 if he or she personally participated in the complained-of constitutional deprivation. *See Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

#### C.  Failure to State a Claim

This action is subject to dismissal against all of the remaining Defendants except for Defendants Thomas and Lopez because the current complaint fails to state a claim on which relief

can be granted in an action under 42 U.S.C. § 1983. Even liberally construing the current complaint

and taking all allegations therein as true, the precise nature of Plaintiff's claim remains unclear.

According to the information now before the Court, Plaintiff is a pretrial detainee. (Doc. 9,

p. 7.) *See* Online Records of Wyandotte County District Court, Case No. 2023-CR-000290.

> The right to custodial medical care is well settled. *See generally Estelle v.
> Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976). "The Fourteenth
> Amendment's Due Process Clause entitles pretrial detainees to the same standard
> of medical care that the Eighth Amendment requires for convicted inmates." *Lance*
> [*v. Morris*], 985 F.3d [787,] 793 ; *see also Clark v. Colbert*, 895 F.3d 1258, 1267
> (10th Cir. 2018) (explaining the Eighth Amendment includes "an entitlement to a
> certain minimum standard of medical care while incarcerated"). "Although pretrial
> detainees are protected under the Due Process Clause rather than the Eighth
> Amendment, this Court applies an analysis identical to that applied in Eighth
> Amendment cases brought pursuant to § 1983." *Olsen* [*v. Layton Hills Mall*], 312
> F.3d [1304,] 1315 [(10th Cir. 2002)].

*Estate of Beauford v. Mesa County, Colo.*, 35 F.4th 1248, 1262 (10th Cir. 2022).

The test for constitutional liability for deliberate indifference to a serious medical need

involves two components, one objective and one subjective. *Paugh v. Uintah County*, 47 F.4th

1139, 1154 (10th Cir. 2022), *pet. for cert.* filed Feb. 7, 2023.

> The objective component focuses on the "seriousness of the plaintiff's
> alleged harm," and the subjective component focuses on 'the mental state of the
> defendant with respect to the risk of that harm."
>
> ....
>
> To satisfy the objective component, "the alleged deprivation must be
> 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self*
> [*v. Crum*], 439 F.3d [1227,] 1230 [(10th Cir. 2006)] (quoting *Farmer* [*v. Brennan*],
> 511 U.S. [825,] 834 [(1994)]). Generally, a medical need qualifies as "sufficiently
> serious" if it "has been diagnosed by a physician as mandating treatment" or if it is
> "so obvious that even a lay person would easily recognize the necessity for a
> doctor's attention." *Sealock* [*v. Colo.*], 218 F.3d [1205,] 1209 [(10th Cir. 2000)]
> (citation omitted).

*Paugh*, 47 F.4th at 1154-55. In addition, "[m]edical delays can be sufficiently serious if they cause

substantial harm, such as 'permanent loss[] or considerable pain.'" *Lance*, 985 F.3d at 793. Here,

Plaintiff alleges that when he saw the dentist two days later, the dentist stated that Plaintiff's tooth must be pulled, a permanent loss. Liberally construing the current complaint, it is reasonable to conclude that the tooth identified as requiring extraction was the tooth that broke when Plaintiff bit into the human tooth in his food. Even assuming solely for the sake of argument, however, that the current complaint sufficiently pleads facts in support of the objective part of the test, it does not include sufficient facts to support the subjective part of the test.

To satisfy the subjective part of the test, Plaintiff must show that each defendant "was aware of a substantial risk of serious harm and chose to disregard that risk." *Id.* at 794. Recently, the Tenth Circuit explained that there are two "theories" under which a plaintiff can satisfy the subjective component of the test for unconstitutional deliberate indifference to serious medical needs: the "failure to properly treat theory" and the "gatekeeper theory." *See Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023). The first occurs when a medical professional fails to properly treat a serious medical condition. *Paugh*, 47 F.4th at 1154. The second occurs when individuals referred to as "gatekeepers," who may or may not be medical professionals and may be prison or jail officials, "'prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment.'" *Id.* (quoting *Sealock*, 218 F.3d at 1211).

Liberally construing the current complaint, as is appropriate since Plaintiff proceeds pro se, it appears that he claims Defendants Nurse D.D., Nurse Jessica, Nurse Rhonda, and John/Jane Doe medical staff were deliberately indifferent under a failure to properly treat theory. The complaint is not entirely clear, however, and Plaintiff may wish to clarify the theories under which he asserts claims against each individual defendant.

In any event, Plaintiff has not pled facts that support the conclusion that Defendants D.D.,

Jessica, Rhonda, or any Jane or John Doe was aware of a substantial risk of serious harm to Plaintiff and chose to disregard that risk. With respect to medical professionals, deliberate indifference to a serious medical need may occur when, for example, the "medical professional 'fails to treat a medical condition so obvious that even a layman would recognize the condition,' 'completely denies care although presented with recognizable symptoms which potentially create a medical emergency,' or 'responds to an obvious risk with treatment that is patently unreasonable.'" *Paugh*, 47 F.4th at 1154 (quoting *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006)). It can also occur when a medical professional "knows that his or her role in a medical emergency is solely to refer the patient to another" medical professional but fails to do so. *See Lucas*, 58 F.4th at 1137.

The only facts pled about a Jane Doe nurse are that she declined to deviate from passing medication in order to evaluate Plaintiff, get him medical attention, or bring him a sick-call form when Plaintiff told her he had bitten into a tooth and was worried about exposure to disease. There is no indication that Plaintiff told the Jane Doe nurse anything that would have alerted her that he was suffering from severe pain or was at risk of serious harm unless he received immediate attention. *Contrast Lance*, 985 F.3d at 796 (concluding that the subjective prong was met by showing "reports of pain [and] repeated requests for medical treatment" and collecting other cases finding the same).

Regarding Defendant D.D., Plaintiff alleges only that he showed her the tooth and D.D. said that the dentist would be at WCADC in two days. Defendant Jessica examined Plaintiff approximately 24 hours after the injury and declined to call the dentist for emergency treatment. The dentist examined Plaintiff approximately 24 hours after that. Defendant Rhonda declined more than two weeks later to give Plaintiff a tetanus shot or order further blood tests, concluding that what Plaintiff believed to be infection was simply a sore that likely would heal on its own. Simply

put, Plaintiff has failed to allege sufficient facts to support the plausible conclusion that any of the medical defendants were deliberately indifferent to a serious medical need.

## IV.   Third Amended Complaint Required

As noted above, Plaintiff has yet to comply with this Court's previous order that he submit a single complete complaint to this Court for filing. However, even reading multiple documents submitted by Plaintiff together, there are several deficiencies in Plaintiff's partial pleadings, which are identified above. Plaintiff is therefore given the opportunity to file a complete and proper third amended complaint upon court-approved forms that cures all the deficiencies discussed herein. Plaintiff must include his entire third amended complaint in a single submission to this Court. He may not, as he has done in the past, make partial submissions by sending some pages of the court-approved form complaint in one mailing and sending other pages of the court-approved form on a different day. Rather, he must submit all pages of his third amended complaint and all attachment and exhibits at one time.

In addition, Plaintiff is advised that an amended complaint does not simply supplement previous complaints; it completely replaces them. Therefore, any claims or allegations not included in the third amended complaint will no longer be before the Court. Plaintiff may not incorporate by reference an earlier filing; the third amended complaint must contain all allegations, claims, and exhibits that Plaintiff intends to pursue in this action, including those to be retained from previously filed complaints.

Plaintiff must write the number of this case (23-3108) at the top of the first page of his third amended complaint. He must name each defendant in the caption of the third amended complaint and again refer to each defendant in the body of the third amended complaint. In each count of the third amended complaint, he must adequately identify the federal constitutional provision or law

he believes was violated and he must allege sufficient facts to show that each defendant personally participated in at least one of the federal constitutional violations alleged in the third amended complaint. Plaintiff may attach additional pages to the form complaint if necessary, but he should not utilize the court-approved form only to refer the Court generally to an attached memorandum. If Plaintiff fails to timely file a complete third amended complaint, this matter may be dismissed without prejudice for failure to comply with a court order.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including **June 30, 2023**, to submit a complete third amended complaint, on the court-approved form, that includes all pages and all exhibits. The failure to do so may result in this matter being dismissed without further prior notice to Plaintiff. The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED.**

DATED:   This 24th day of May, 2023, at Kansas City, Kansas.


S/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge